STATE of Missouri, Respondent,

v.

Robert JONES, Appellant.

ED 104588

Missouri Court of Appeals,
Eastern District,
Division One.

Filed: June 30, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied
August 22, 2017

Application for Transfer to Supreme
Court Denied October 31, 2017

Lisa Stroup, for defendant.

Karen Kramer, for respondent.

Lisa P. Page, Judge

Robert Jones ("Defendant") appeals the trial court's judgment entered upon a jury verdict convicting him of three counts of first-degree statutory sodomy, in violation of Section 566.062,[1] three counts of incest, in violation of Section 568.020, three counts of first-degree child molestation, in violation of Section 566.067, and one count of sexual misconduct involving a child, in violation of Section 566.083. We affirm.

## BACKGROUND

In the summer of 2014, Defendant's nine-year-old daughter ("Victim") revealed to her cousin that Defendant was sexually

---

1. All statutory references are to RSMo Cum. Sup. 2015, unless otherwise indicated.

abusing her when Victim visited on the weekends. Eventually, Victim recounted the multiple episodes of sexual abuse to law enforcement and the Children's Advocacy Center.

In December 2014, Defendant was arrested, and, thereafter indicted in January 2015. After several continuances for various reasons—including witness investigations, delays in acquiring records, depositions of witnesses, and the withdrawal of defense counsel—Defendant was tried by a jury in May 2016. After the jury rendered its guilty verdict, the trial court sentenced Defendant to a total term of imprisonment of 15 years for all ten counts. This appeal follows.

Additional facts will be provided as needed during our analysis of the points presented by Defendant's appeal.

## DISCUSSION

Defendant advances three points on appeal. First, Defendant contends the trial court plainly erred in allegedly closing the courtroom during voir dire, in that Defendant has a constitutional and statutory right to an open and public trial, thereby violating Defendant's rights to equal protection and due process, in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10, 14, and 18(a) of the Missouri Constitution.

Second, Defendant avers the trial court plainly erred in failing to *sua sponte* strike Venireperson Terence Nash ("Venireperson Nash") for cause, in that Defendant has a constitutional right to a fair and impartial jury, thereby violating Defendant's right to due process, in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.

Third, Defendant argues the trial court plainly erred in failing to *sua sponte* dismiss his indictment, in that the State prohibited Defendant from securing his constitutional right to a speedy trial, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10, 18(a), and 21 of the Missouri Constitution.

### *Standard of Review*

It is uncontroverted Defendant failed to preserve all three of his points for appellate review, and, therefore, requests this court review his allegations of error under plain error.

It is a well-established axiom of Missouri law that issues not raised or preserved in the trial court are waived and cannot, thereafter, be appealed. State v. Fassero, 256 S.W.3d 109, 117 (Mo. banc 2008); see also State v. Tisius, 362 S.W.3d 398, 405 (Mo. banc 2012) (properly preserving an issue for appeal requires a timely and specific objection during trial). Nevertheless, Rule 30.20 supplies our appellate courts a mechanism to review unpreserved claims of error in limited circumstances. See Rule 30.20. Specifically, Rule 30.20 authorizes an appellate court to consider "plain errors affecting substantial rights[.]" Rule 30.20; see also State v. Johnson, 207 S.W.3d 24, 34 (Mo. banc 2006) ("Unpreserved issues may only be reviewed for plain error.").

Generally, appellate review of unpreserved errors under Rule 30.20 follows "a two-prong standard." State v. Roper, 136 S.W.3d 891, 900 (Mo. App. W.D. 2004). First, the court determines whether there is, indeed, plain error, which is error that is "evident, obvious, and clear." Id. (citations omitted); State v. Edwards, 280 S.W.3d 184, 188 (Mo. App. E.D. 2009) (citations omitted) ("Plain error" is defined as error that facially establishes substan-

tial grounds for believing "that manifest injustice or miscarriage of justice has resulted from the trial court error."). If so concluded, the court then shifts to the second prong of the analysis, "which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." Id.; but see State v. Rogers, 51 S.W.3d 879, 880 (Mo. App. W.D. 2001) (referring to Rule 30.20 as a "conundrum").

■ Not all prejudicial error—that is, reversible error—can be deemed plain error. State v. Smith, 293 S.W.3d 149, 151 (Mo. App. S.D. 2009). Rather, "[a] defendant's Rule 30.20 burden is much greater—not merely to show prejudice, but manifest injustice or a miscarriage of justice—which in this context means outcome-determinative error." Id.

■ Appellate courts retain complete discretion on whether to review an unpreserved matter for possible plain error. State v. Marshall, 131 S.W.3d 375, 377 (Mo. App. E.D. 2004). In fact, the Supreme Court of Missouri has stated that "[p]lain error should be used sparingly and does not warrant review of every single trial error unpreserved for review." State v. Ringo, 30 S.W.3d 811, 821 (Mo. banc 2000); State v. Campbell, 122 S.W.3d 736, 739 (Mo. App. S.D. 2004) ("Rule 30.20 is no panacea").

## Analysis

### Point I—Public Trial

In his first point on appeal, Defendant claims the trial court plainly erred "closing" the courtroom during a segment of voir dire. Specifically, Defendant maintains the trial court unconstitutionally prohibited and prevented the public from observing the voir dire of Defendant's criminal trial.

In an apparent effort to enhance the trial court's auditory comprehension of the attorneys and venirepersons during voir dire, the trial court stated:

> Everybody out for voir dire, please. Thank you. I do that, folks, not to be disrespectful to anybody, but I can't tell what the people behind the last row are saying when they're there. So if I let one side in[,] I got to let everybody in, that way everybody, you in the back don't get any disruptions.

At that time, and throughout the course of trial, no objection was lodged by any party, including Defendant. Now, on appeal, Defendant, for the first time, avers the trial court unconstitutionally "closed" voir dire to public access.

### Constitutional Right to a Public Trial

■ In all criminal prosecutions, defendants have a constitutional right to a public trial. See U.S. CONST. AMEND. VI; see also MO. CONST. ART. I, § 14 ("That the courts of justice shall be open to every person...."); Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) ("[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public."). The Supreme Court of the United States has deemed it "well settled" that "the Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors." Presley v. Georgia, 558 U.S. 209, 213, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) (reaffirming that the Sixth Amendment right to a public trial applies to the individual states via the Due Process Clause of the Fourteenth Amendment); see also Press-Enter. Co. v. Superior Court of Cal., Riverside County, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("The process of juror selection is

itself a matter of importance[.]").[2] "Whether a defendant's right to a public trial has been violated is a question of law subject to *de novo* review." State v. Salazar, 414 S.W.3d 606, 612 (Mo. App. S.D. 2013) (internal citations and quotation marks omitted).

The Sixth Amendment right to a public trial, however, is not absolute. Presley, 558 U.S. at 213, 130 S.Ct. 721. After "ensur[ing]" the proper balance between competing interests[,] a trial court may close the courtroom under exigent circumstances. Salazar, 414 S.W.3d at 612; see also Waller, 467 U.S. at 45, 104 S.Ct. 2210 ("[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information."). To constitutionally justify the closure of any portion of a trial, the United State Supreme Court has enumerated four factors the trial court must contemplate, upon objection, prior to constraining public access:

1) an "overriding interest that is likely to be prejudiced" by a public proceeding must be stated;

2) "the closure must be no broader than necessary to protect that interest;"

3) "the trial court must consider reasonable alternatives to closing the proceeding;" and

4) "it must make findings adequate to support the closure."

Salazar, 414 S.W.3d at 612 (quoting in part Presley, 558 U.S. at 214, 130 S.Ct. 721).

Notwithstanding the autonomy afforded to trial courts to deny the public access to trial proceedings under limited circumstances, trial closures, including restrictions upon the public to observe voir dire, are to be "rare and only for cause shown that outweighs the value of openness." Press-Enter. Co., 464 U.S. at 509, 104 S.Ct. 819 (1984). Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." Salazar, 414 S.W.3d at 612 (quoting Presley, 558 U.S. at 215, 130 S.Ct. 721). In fact, trial courts are required to, *sua sponte,* "consider [and reject] alternatives to closure even when they are not offered by the parties." Presley, 558 U.S. at 214, 130 S.Ct. 721.

### Structural Error

Violations of a defendant's Sixth Amendment right to a public trial at the voir dire phase "is structural error that requires no showing of prejudice." Salazar, 414 S.W.3d at 612 (quoting Crawford v.

2. The constitutional guarantee of a public trial under the auspices of the Sixth Amendment is for the benefit of the defendant, and that guarantee is far more likely to be guarded when the public is provided the opportunity to observe. See In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power."); see also Sheppard v. Maxwell, 384 U.S. 333, 349, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) ("justice cannot survive behind walls of silence"); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)

("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). However, this court notes "[t]he extent to which the First and Sixth Amendment public trial rights are coextensive is an open question, and it is not necessary here to speculate whether or in what circumstances the reach or protections of one might be greater than the other." Presley, 558 U.S. at 213, 130 S.Ct. 721; see, generally, Press-Enter. Co., 464 U.S. 501, 104 S.Ct. 819 (holding that the public trial right extends beyond the accused and can be invoked under the First Amendment).

Minnesota, 498 F.3d 851, 854 (8th Cir. 2007)). If a trial court fails to adhere to the procedures set forth in Presley, any intentional closure is deemed unjustified and will, in all but the rarest of cases, require reversal. U.S. v. Gupta, 699 F.3d 682, 687 (2nd Cir. 2012).

Recently, the Supreme Court of the United States held that although an infringement upon a defendant's Sixth Amendment right to a public trial is "structural error," a public trial violation does not render a trial fundamentally unfair in every case. Weaver v. Mass., —— U.S. ——, ——, 137 S.Ct. 1899, 198 L.Ed.2d 420, 2017 WL 2674153, *9 (U.S. June 22, 2017) ("These precepts confirm the conclusion the Court now reaches that, while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint.").

### Plain Error Review of Alleged Closure

■ In reviewing for plain error, we recognize that in this matter, the trial court's extemporaneous proclamation independently removing spectators from the courtroom was disseminated as the trial court struggled to efficiently and effectively conduct voir dire. This purported "closure" appears inadvertent; in fact, it appears the trial court implemented this "closure" so as to ensure Defendant's right to a fair and an impartial jury could be more effectively administered by the trial court. State v. Hendrix, 646 S.W.2d 830, 832 (Mo. App. W.D. 1982) ("Where a member of the venire gives an equivocal or otherwise uncertain answer of an ability to hear the evidence and adjudge the cause without bias or prejudice, then the *duty of the trial judge* to make an independent inquiry of qualification arises.") (emphasis in original); see also U.S. v. Akers, 542

F.2d 770, 772 (9th Cir. 1976) ("The right to a public trial does not preclude a limited exclusion of spectators where necessary to avoid disorder[.]"). Moreover, there exists no evidence as to the duration of the "closure," how the "closure" was enforced, if at all (and for how long), and whether anyone was *actually* excluded or thwarted from attending or observing either voir dire or the trial. See, e.g., Salazar, 414 S.W.3d at 616 ("In what appears to be a case of first impression in Missouri, we are unwilling to find that a new trial must be ordered when there is no evidence that a member of the public actually attempted to attend voir dire and was prohibited from doing so.").

Thus, we conclude Defendant was not deprived of the protections of a public trial, so as to violate the Sixth Amendment or the Missouri Constitution. At no time was the courtroom cleared of all spectators—there is no evidence the courtroom was closed to the public during any witness testimony, opening or closing statements, jury instructions, or trial. See, e.g., Weaver, —— U.S. at ——, 137 S.Ct. 1899, 2017 WL 2674153 at *13. In fact, Defendant offers no evidence that the trial, itself, was not open to the general public and the press at all times. The record does not suggest Defendant, his family, his friends, or any witnesses were improperly excluded. See Salazar, supra.

■ Furthermore, a review of the trial court transcript during voir dire shows that both parties engaged in a vigorous and fair voir dire process. Therefore, the values sought to be safeguarded by a public trial right were, in fact, protected. Weaver, —— U.S. at ——, 137 S.Ct. 1899, 2017 WL 2674153 at *13 ("There has been no showing, furthermore, that the potential harms flowing from a courtroom closure came to pass in this case. For example, there is no suggestion that any juror lied

during *voir dire*; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands."). Any infringement upon Defendant's right to a public trial was trivial.[3]

Assuming, *arguendo*, there was, indeed, a violation of Defendant's Sixth Amendment right to a public trial, said violation does not rise to the level of "structural error" under the most recent Supreme Court precedent. Id. Point I is denied.

## Point II—*Sua Sponte* Strike of Venireperson For Cause

In Point II, Defendant contends the trial court plainly erred in failing to *sua sponte* strike Venireperson Nash for cause on the basis that he equivocated or expressed reservations regarding his ability to fairly weigh the testimony of the nine-year-old Victim.

It is uncontested that at trial Defendant failed to object to Venireperson Nash's empaneling, thereby waiving appellate review. State v. Wade, 467 S.W.3d 850, 856 (Mo. App. W.D. 2015); see also State v. Baumruk, 280 S.W.3d 600, 615 (Mo. banc 2009) ("The rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal, and, if unsuccessful, mount a post-conviction attack on the jury selection process.") (internal citations and quotation marks omitted). Nevertheless, Defendant requests plain error review, pursuant to

Rule 30.20, supra. Wade, 467 S.W.3d at 856.

Article I, Section 22(a) of the Missouri Constitution guarantees all criminal defendants the right to a trial by jury. See Mo. CONST. ART. I, § 22(a). That constitutional guarantee "means the right to be tried by a fair and impartial jury." State v. King, 746 S.W.2d 120, 122 (Mo. App. S.D. 1988); see also White v. State, 290 S.W.3d 162, 165 (Mo. App. E.D. 2009) (a fair and impartial jury is a well-settled constitutional right of all defendants). To protect a defendant's constitutional right to a fair and impartial jury, a venireperson is qualified to serve as a juror only if said venireperson is able to enter upon that service with "an open mind, free from bias and prejudice." State v. Ervin, 835 S.W.2d 905, 915 (Mo. banc 1992). "A prospective juror who does not enter the jury box with an open mind, free from bias or prejudice in favor of or against either party, is not a competent juror." King, 746 S.W.2d at 122-23.

However, Missouri courts have "consistently held that a trial court is under no duty to remove any venire member *sua sponte*." State v. Ebeirus, 184 S.W.3d 582, 585 (Mo. App. S.D. 2006). In fact, "[j]uror challenges first made after conviction are highly suspect." State v. Salkil, 837 S.W.2d 367, 369 (Mo. App. S.D. 1992). "Where the trial court is under no duty to strike a venire member, there is *no evident, obvious, or clear error*, and therefore no plain error." State v. Skinner, 494 S.W.3d 591, 594 (Mo. App. W.D. 2016) (emphasis added).

---

**3.** We emphasize that we do not condone the exclusion of any person from trial court proceedings without prior explicit consideration, on the record, of the criteria set forth by United States Supreme Court precedent. "We caution that the exclusion of any spectator runs the risk of violating the Sixth Amend- ment, and, accordingly, of requiring a new trial." Braun v. Powell, 227 F.3d 908, 920 (7th Cir. 2000). However, on the narrow facts presented here, we are convinced that any effect of the alleged "closure" on Defendant's trial did not rise to the level of a Sixth Amendment violation. Id.

Therefore, we find no basis for plain error review and elect not to proceed to the second step of determining whether the claimed error resulted in a manifest injustice or miscarriage of justice. See, e.g., id.

Point II is denied.

## Point III—*Sua Sponte* Dismissing Indictment

■ In his third point on appeal, Defendant argues the trial court plainly erred in not dismissing the indictment, *sua sponte*, for the State's alleged speedy trial violation. See State v. Honeycutt, 96 S.W.3d 85, 89 (Mo. banc 2003) ("[A] trial judge does not have the inherent authority to dismiss a case *with, prejudice* for failure to prosecute in the absence of a speedy trial violation.") (emphasis in original). Specifically, Defendant, maintains his trial was delayed 491 days, thereby causing Defendant to suffer a manifest injustice or miscarriage of justice.

Again, as in the first two points on appeal, it is undisputed Defendant failed to properly preserve this issue for appellate review and advances his plain error claim, pursuant to Rule 30.20, supra. See State v. Drudge, 296 S.W.3d 37, 42 (Mo. App. E.D. 2009).

■ A criminal defendant's right to a speedy trial is provided by the Sixth Amendment of the United States Constitution and Article I, Section 18(a) of the Missouri Constitution. State v. Sisco, 458 S.W.3d 304, 313 (Mo. banc 2015); see also U.S. CONST. AMEND. VI; MO. CONST. ART. I, § 18(a). The federal and Missouri constitutions provide equivalent protection for a defendant's right to a speedy trial. State v. Greenlee, 327 S.W.3d 602, 611 (Mo. App. E.D. 2010). "Orderly expedition of a case, not mere speed, is the essential requirement behind a speedy trial." Id. A defendant's deprivation of speedy trial "is not

considered *per se* prejudicial[.]" State v. Bell, 66 S.W.3d 157, 164 (Mo. App. S.D. 2001).

■ In assessing whether a defendant's right to a speedy trial has been violated, courts engage in a "difficult and sensitive" balancing process, considering the following the four factors:

(1) the length of delay;

(2) the reason for the delay;

(3) the defendant's assertion of his right; and

(4) prejudice to the defendant.

State v. Green, 389 S.W.3d 684, 686 (Mo. App. S.D. 2012) (internal citations omitted); see also Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Here, the State tacitly concedes the first and second factors, supra, favor Defendant, in that: (1) the delay in bringing Defendant to trial exceeded eight months, Dillard v. State, 931 S.W.2d 157, 162 (Mo. App. W.D. 1996); and (2) "the majority of the delay was attributable either to the state or the trial court[,]" see State v. Fisher, 509 S.W.3d 747, 753-54 (Mo. App. W.D. 2016). On the contrary, the third and fourth factors, supra, weigh against Defendant, in that: (3) Defendant delayed filing his request for a speedy trial until nine months after his arrest, State v. Newman, 256 S.W.3d 210, 216 (Mo. App. W.D. 2008) ("Waiting several months to assert the right to a speedy trial has been found to weigh against a defendant."); and (4) after trial, Defendant was sentenced to a total of fifteen years' imprisonment, thereby eradicating any claim Defendant may have as to serving additional jail time because of the delay in bringing him to trial, see State v. Greenlee, 327 S.W.3d 602, 613 (Mo. App. E.D. 2010).

Defendant has failed to prove he was prejudiced by the delay in bringing him to

trial, must less that said delay caused him a manifest injustice. Thus, a more comprehensive analysis of each factor would be superfluous and unnecessary under our plain error review, in that Defendant has failed to satisfy his burden of proving that "prejudicial error resulted" and said error "amounted to manifest injustice." State v. Goode, 721 S.W.2d 766, 770 (Mo. App. E.D. 1986).

Moreover, Defendant elected not to contest the sufficiency of the evidence as to his conviction, thereby encumbering his argument that he suffered a manifest injustice precipitated by the delay in bringing him to trial. See State v. Kunonga, 490 S.W.3d 746, 755 (Mo. App. W.D. 2016) ("Appellate courts rarely find plain error in criminal cases if there is overwhelming evidence of guilt or the evidence is sufficient to support a conviction.") (internal citations omitted). We find that overwhelming evidence established Defendant's guilt, and if any prejudice did in fact result from the trial court's delay in bringing him to trial, Defendant has clearly failed to meet his burden of showing that it rose to the level of manifest injustice or miscarriage of justice required by the plain error rule. Goode, 721 S.W.2d at 770.

Point III is denied.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.